IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CATHY WILLIAMS,

         Plaintiff,

v.                                 CIVIL ACTION NO. 2:19-cv-00496

WEST VIRGINIA DIVISION
OF CORRECTIONS, et al.,

         Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are cross motions for summary judgment filed by Plaintiff Cathy Williams ("Plaintiff") and Defendants Wexford Health Sources, Inc. ("Wexford"), Craig Smith, Paula Tomlin, and Heidi Beegle (collectively, "Wexford Defendants"). (ECF Nos. 33, 35.) For the reasons discussed herein, Plaintiff's motion, (ECF No. 33), is **DENIED** and Defendants' motion, (ECF No. 35), is **GRANTED IN PART** and **DENIED IN PART**.

                        I.      BACKGROUND

This action arises out of injuries Plaintiff allegedly sustained while in the custody of the West Virginia Division of Corrections ("WVDOC") at the Lakin Correctional Center ("Lakin"). (ECF No. 1-2 at 1 ¶ 1.) Wexford is a third-party contractor that provides health services for the WVDOC. (*Id.* ¶ 3.) On March 12, 2016, Plaintiff was being moved with a Hoyer lift when the sling component attached to the lift broke, causing Plaintiff to fall to the floor and fracture her femur and hip. (*Id.* at ¶ 1, 13.) Smith, a certified nursing assistant employed by Wexford, was

operating the lift at the time the sling broke and Plaintiff fell. (*Id.* ¶ 6.) Beegle and Tomblin were also employed by Wexford as non-medical, administrative employees. (*Id.* ¶ 4.)

On July 7, 2017, Plaintiff filed this action in the Circuit Court of Kanawha County, West Virginia, asserting various state law claims against the WVDOC, Wexford, and Smith. (ECF No. 1-1.) On May 10, 2019, Plaintiff filed an amended complaint asserting additional claims and naming Tomblin and Beegle. (ECF No. 1-2.) The Amended Complaint asserts six causes of action for deliberate indifference in violation of the Eighth Amendment under 42 U.S.C. § 1983 (Count I); reckless or negligent supervision, training, and hiring (Count II); negligent, reckless, and intentional conduct (Count III); common law negligence (Count IV); vicarious liability (Count V); and premises liability (Count VI).[1]

On July 3, 2019, this case was properly removed to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. (ECF No. 1.) On March 9, 2020, Plaintiff and Defendants filed the present cross motions for summary judgment. (ECF No. 33, 35.) Both Plaintiff and Defendants timely responded to the respective motions on March 23, 2020. (ECF Nos. 39, 40.) Defendants filed an untimely reply on April 29, 2020, (ECF No. 44), and Plaintiff neglected to file a reply brief entirely. As the deadline for filing a reply has elapsed, the motions are now ripe for adjudication.[2]

---

[1] Upon a motion to dismiss filed by Defendants, this Court previously dismissed Plaintiff's premises liability claim for failure to state a claim upon which relief could be granted. (ECF No. 29.) That claim was later reinstated on June 12, 2020, after Plaintiff moved to file a second amended complaint and presented evidence to support the claim. (ECF Nos. 49, 52, 53.)

[2] Because the Second Amended Complaint does not alter Plaintiff's deliberate indifference claim under § 1983, the motions for summary judgment will be applied to the amended pleading. *See McKay v. Federspiel*, No. 14-cv-10252, 2015 WL 13688535, at *1 (E.D. Mich. Feb. 26, 2015) (finding amended pleading did not moot pending motions for summary judgment); 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed.2010) (stating that if the amended pleading does not cure the defects raised by the motions directed at the superseded pleading, denying the motions as moot "would be to exalt form over substance.").

2

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

## III. DISCUSSION

The parties seek summary judgment solely on the deliberate intent claim in Count I. Plaintiff claims that the Wexford Defendants unconstitutionally acted with deliberate indifference to Plaintiff's safety and medical needs by repeatedly using a sling in disrepair and in violation of

3

the sling's manual and user guide. Additionally, Plaintiff claims that Wexford has demonstrated a pattern and practice of exposing Plaintiff to the unsafe condition of the sling, thereby acting with deliberate indifference to the danger posed to Plaintiff.

Claims concerning deliberate indifference to an inmate's safety and medical needs are analyzed under the Eighth Amendment to the United States Constitution. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (noting that the Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'") (internal citation omitted); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (holding that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation).

To establish a violation of the Eighth Amendment, a plaintiff must prove both objective and subjective elements. *See Farmer*, 511 U.S. at 834; *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). The objective prong requires the plaintiff to show that he or she had a "serious" medical need—one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citation omitted). The parties seemingly do not dispute that Plaintiff's inability to walk due to an underlying medical condition satisfies the objective prong. *See Krell v. Queen Anne's Cty.*, No. 18-cv-0637, 2019 WL 6131076, at *2 (D. Md. Nov. 19, 2019) (noting, "[c]hronic injuries that predate interactions with law enforcement are regularly held to constitute sufficiently serious medical needs, even if the injuries do not require 'urgent' medical attention" and citing cases).

4

Under the subjective prong, the plaintiff must show that the prison officials acted with a "sufficiently culpable state of mind," which demonstrates "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation omitted). In the context of inadequate medical care, "it is not enough that an official should have known of a risk." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Rather, deliberate indifference requires proof that the prison officials both "kn[ew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

"Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks and alterations omitted); *Anderson*, 877 F.3d at 544 ("An accidental or inadvertent response to a known risk is insufficient to create Eighth Amendment liability."). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. To establish deliberate indifference, the prison official's conduct "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

In this case, the sling at issue is a component of a Hoyer lift that was used multiple times a day to move Plaintiff from her wheelchair, bed, and other locations. (ECF No. 33-5.) The instruction manual governing the use of the sling recommends "examin[ing] slings for fraying or other damage" daily and cautions to "NEVER use a sling, which is frayed or damaged . . . or . . . show[ing] signs of wear." (ECF No. 33-3.) In addition, the label attached to the lift details the need to "[t]horoughly inspect and test the . . . sling at a minimum of every six (6) months." (ECF

5

No. 33-4.) In the event the sling is worn or damaged, the user guide advises against making any alterations and, instead, recommends destroying and discarding the sling. (ECF No. 39-5 at 1.)

Although the WVDOC owned the Hoyer lift, there is no dispute that the Wexford Defendants exclusively used the lift and were solely responsible for inspecting the lift and its components. (ECF No. 33-9 at 2–3 (testifying that Wexford was responsible for using and inspecting medical equipment, including the Hoyer lift); ECF No. 33-10 at 2–3 (same); ECF No. 33-11 at 2 (same).) It is apparent that damage to the sling, such as fraying or general wear and tear, could be visible upon inspection. (ECF No. 33-5.) Further, there is no dispute that the sling at issue was repaired or reinforced, against the user guide's recommendation, at some point prior to Plaintiff's fall. (ECF No. 39-2 at 2.)

Plaintiff argues that the Wexford Defendants knew of and disregarded the dangers of using a reinforced sling, relying on Beegle's admission that the sling should have been replaced instead of being repaired or reinforced. (*Id.* at 2.) However, this knowledge and failure to follow the user guide's recommendation does not rise above mere negligence such that a reasonable jury could find deliberate indifference. *See Miltier*, 896 F.2d at 851 (holding, "to establish . . . deliberate indifference to a serious medical need, the treatment, (or lack thereof), must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."). Thus, the Wexford Defendants' failure to follow the instructions and warnings contained in the sling's user guide is insufficient to support a deliberate indifference claim.

Plaintiff also bases her deliberate indifference claim on the notion that the Wexford Defendants knew that the sling was in disrepair but continued to use it despite its poor condition.

6

With respect to any knowledge of the sling's condition, Beegle testified that she had not seen the subject sling prior to the incident during which the sling broke and Plaintiff fell. (ECF No. 37 at 4.) Nor did Beegle know that the subject sling that been repaired until after it had broken during the subject incident. (*Id.*) Similarly, Tomlin testified that, prior to the subject incident, she only saw the sling once and that was after it was reinforced. (*Id.* at 7.) WVDOC employees, Charles Flower, Nathan Ball, and Robert Johnson, all testified that they never saw the subject sling prior to Plaintiff's fall and had no personal knowledge as to the condition of the sling prior to the subject incident. (ECF No. 37 at 12, 15–16, 22.) The only person who testified to seeing the sling close in time to the subject incident was Smith, who stated that there was no visible damage to the sling when he inspected it on the day of Plaintiff's fall. (*Id.* at 9.)

Despite their deposition testimonies, the Wexford Defendants curiously indicated twice in discovery that the subject sling needed replaced prior to Plaintiff's incident. In response to an interrogatory, the Wexford Defendants stated that "on at least two occasion[s] prior to the subject incident, the Wexford defendants advised the WVDOC that the subject Hoyer sling needed replaced (once in September of 2015 and again by email dated February 2, 2016 from Paula Tomlin to Warden Lori Nohe which included product ordering information for the Hoyer sling)." (ECF No. 33-7 at 3.) The Wexford Defendants also admitted during discovery that Wexford informed the WVDOC that "the sling needed replaced prior to plaintiff being injured." (ECF No. 33-8 at 2.)

Plaintiff also points to two emails dated March 14, 2016, in an attempt to demonstrate that the defendants had knowledge of the need to procure a replacement sling six months prior to the subject incident. In the first email, Beegle states that "[Wexford] had told [WV]DOC a couple months ago that [Wexford] could use another sling and sent [the sling] information to them." (ECF

7

No. 33-1.) The email goes on to state that "[t]he sling had been repaired by industries . . . at Lakin, although I do not know if it was in the same area, as [WV]DOC has the sling." (*Id.*) In the second email, Beegle states, "it was brought to [WV]DOC's attention that [Wexford] needed a new sling in September" but the information on the sling was not sent until February. (ECF No. 33-2.) Beegle also confirms that "the strap that was reinforced was the strap that broke." (*Id.*) These emails establish that Wexford had requested a new or additional sling before Plaintiff's fall and, further, that the strap that broke during the subject incident had previously been repaired or reinforced. However, the Court cannot go so far as to assume that the request for a new sling was made with the intent to replace the existing sling because it was in disrepair. Indeed, nowhere in these emails does Beegle indicate that the requested sling was intended to be a replacement or that the existing sling was frayed, damaged, worn, in disrepair, or needed replaced.

To the contrary, according to the Wexford Defendants, the requests for a new sling in September 2015 and February 2016 were for an additional sling rather than a replacement sling. Beegle testified that Tomlin sent the email dated February 2, 2016 to the WVDOC because Beegle "wanted another sling." (ECF No. 45 at 18.) Beegle further testified that there was a need for an additional sling because the subject sling was frequently soiled and would consequently require laundering. (*Id.* (stating, "I wasn't replacing a sling; I wanted an additional sling.").) In addition, Tomlin, the author of the February 2, 2016 email, testified that "[i]t wasn't that we needed a new one, we needed an additional sling." (*Id.* at 2.) Ball also testified that Wexford's request for the WVDOC to purchase a sling was not because the existing sling was in bad repair, but it "was just for an additional sling" or "a second sling." (*Id.* at 20–21.) Ball further testified that Wexford "never [said that] the sling needed replaced . . . ." (*Id.* at 20.) Instead, Wexford "wanted an

8

additional sling . . . so they had two . . . Not just one . . . [Ball] believe[d]" a new sling was requested "because if they washed, cleaned one, they would have a second one to use while that one was out to dry . . . ." (*Id.* at 21.)

Faced with this contracting evidence, Plaintiff argues that the findings contained in the incident report and a series of photographs of the subject sling support her deliberate indifference claim. The incident report states that the "sling also showed evidence of reinforcing stitching in several places and showed significant wear throughout the surface of the fabric." (ECF No. 33-6.) However, as noted previously, Flowers, who prepared the report and observed the sling only after the incident, testified that he had no personal knowledge as to the condition of the sling prior to Plaintiff's fall. (ECF No. 45 at 6.) Similarly, though the photographs depict some loose stitching, (ECF No. 39-3), it appears Flowers took these photographs after the subject incident occurred. Thus, this evidence does little to establish the condition of the sling prior to the incident that led to Plaintiff's fall.

Considering all the evidence, the Court finds that genuine issues of material fact exist regarding whether the Wexford Defendants had actual knowledge that the sling was worn, frayed, or otherwise damaged prior to the incident. Accordingly, the motions as to the Wexford Defendants are **DENIED**.

Even if Plaintiff can establish the subjective component of her deliberate indifference claim, the Wexford Defendants argue that Beegle and Tomblin cannot be held liable because they are non-medical administrative employees who were neither responsible for operating the Hoyer lift or personally involved in Plaintiff's medical treatment or care. Supervisory officials, such as Beegle and Tomblin, cannot be held liable merely for actions or inactions on the part of their

9

subordinates. *See Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984); *Carter v. Morris*, 164 F.3d 215, 220–21 (4th Cir. 1999). Supervisory officials can only be liable in certain circumstances where it is shown they either failed to timely provide needed care, "deliberately interfered" with the doctors' performance, or "tacitly authorized or were deliberately indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854. Supervisory liability is not premised upon respondeat superior but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan*, 737 F.2d at 372 (citations omitted).

Plaintiff has presented sufficient evidence to establish that Beegle and Tomblin were responsible for taking the sling out of service and requesting and providing replacement information to the WVDOC if the subject sling was in fact damaged or otherwise in disrepair. (ECF No. 33-7 at 3–4; ECF No. 37 at 3.) Given the factual issues concerning their knowledge of the condition of the sling at the time of the subject incident, summary judgment as to these defendants must be **DENIED**.

As a final matter, Plaintiff also seeks to hold Wexford liable under § 1983. A private corporation, such as Wexford, "cannot be held liable in a § 1983 action for the acts of its employees under the doctrine of respondeat superior." *Motto v. Correctional Med. Servs.*, 2007 WL 2897854, *3 (S.D. W. Va. 2007); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 738 (S.D. W. Va. 2009). A corporation can be liable under § 1983 "only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Motto*, 2007 WL 2897854, *3 (citing *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999)).

Wexford argues that it is entitled to summary judgment because Plaintiff has failed to produce any evidence of an official policy or custom that caused Plaintiff's alleged constitutional violation. Relying on an affidavit by Ball, Plaintiff responds that Wexford "repeatedly implemented a policy that placed financial savings over patient safety." (ECF No. 39 at 7.) In Ball's affidavit, the WVDOC employee states "[t]hat it would have been possible for Wexford to replace the sling and request reimbursement by WVDOC." (ECF No. 39-12.) Based on this statement, Plaintiff contends that any delay by the WVDOC in purchasing a new sling could have been circumvented by Wexford purchasing the sling itself and seeking reimbursement.

However, as Wexford highlights, Ball testified that the "normal procedure" was for the WVDOC to directly make purchases rather than Wexford making a purchase and seeking reimbursement. (ECF No. 45 at 25–26.) As the direct liaison between the WVDOC and Wexford for procurement, Ball could not recall any time that Wexford made a purchase directly and sought reimbursement from the WVDOC. (*Id.* at 26.) He confirmed that the more "regular method would be for the request to go straight to the [WV]DOC" and for "the [WV]DOC [to] make[] the purchase directly." (*Id.*) The "possibility" that Wexford could have purchased a new sling and later sought reimbursement from the WVDOC, which was not the "normal practice" (Ball was not aware of this "possibility" ever having been utilized), does not rise to the level of proof of an official Wexford policy or custom of disregarding patient safety necessary for Plaintiff to establish a § 1983 claim against Wexford. Accordingly, as Plaintiff has failed to establish a Wexford policy or custom that caused Plaintiff's alleged deprivation of federal rights, Defendants' motion for summary judgment as to Wexford is **GRANTED.**

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion, (ECF No. 33), and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion, (ECF No. 35). Defendants' motion is granted insofar as it seeks summary judgment as to Wexford on Plaintiff's deliberate indifference claim under § 1983.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 4, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE